IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| **DOROTHY LEE,** *as Wife and Personal Representative of John Morris Lee, Jr. and Estate of John Morris Lee, Jr., Deceased*, and **JOHN MORRIS LEE, III,** *as Son and Wrongful Death Beneficiary of John Morris Lee, Jr., Deceased* § § § § § § § § § | | **PLAINTIFFS** |
| v. § § § | | Civil No. 1:13cv441-HSO-RHW |
| **JACKSON COUNTY, MISSISSIPPI,** *et al.* § § | | **DEFENDANTS** |

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT
DR. SID ROSS'S [258] MOTION FOR SUMMARY JUDGMENT; DENYING
AS MOOT DR. SID ROSS'S [254] MOTION TO STRIKE TESTIMONY AND
SUPPLEMENTAL EXPERT REPORT OF MICHAEL STEVENS, D.O.;
AND DENYING AS MOOT DR. SID ROSS'S [265] MOTION
TO STRIKE SUPPLEMENTAL WITNESSES**

**BEFORE THE COURT** are the Motion [254] to Strike Testimony and Supplemental Expert Report of Michael Stevens, D.O., the Motion [258] for Summary Judgment, and the Motion [265] to Strike Supplemental Witnesses, all filed by Defendant Dr. Sid Ross.[1]  These Motions are fully briefed.  Having considered the Motions, related pleadings, the record, and relevant legal authority, the Court is of the opinion that Defendant Dr. Ross's Motion [258] for Summary Judgment should be granted, and that Plaintiffs' claims against Dr. Ross should be

---

[1] Dr. Ross states that he is properly referred to as William S.R. Ross, M.D.  Mot. [258] at 1. However, Dr. Ross's name has not been formally amended in the record.

dismissed in their entirety. Dr. Ross's Motions [254], [265] to Strike are rendered moot.

## I. BACKGROUND

A.   Factual background

This case arises out of the unfortunate death of John Morris Lee, Jr. ("Mr. Lee" or "Decedent") on February 24, 2013, while he was incarcerated at the Jackson County Adult Detention Center ("ADC") in Pascagoula, Mississippi. Mr. Lee was arrested and booked into the Pascagoula City Jail on December 1, 2012, on a felony shoplifting charge. Release Sheet [258-1] at 21. On December 5, 2012, Mr. Lee was transferred to the ADC. Booking Medical Sheet [258-1] at 19-20; Booking Sheet [258-1] at 22-23. On February 24, 2013, at approximately 7:11 a.m., other inmates summoned deputies to the dayroom where Mr. Lee was located. Death Investigation [258-1] at 1. Mr. Lee was reportedly having a seizure and was found unresponsive and gasping for breath. *Id.* Emergency medical technicians arrived at approximately 7:18 a.m. and took over cardio pulmonary resuscitation. *Id.* at 1-2. At approximately 7:58 a.m., Mr. Lee was transported via ambulance to the Singing River Hospital emergency room, where he was pronounced dead at 8:23 a.m. *Id.*

1.   Dr. Ross's role at the ADC

Dr. Sid Ross ("Dr. Ross") began working as a contract physician at the ADC in 2005, and worked in that capacity through at least February 2013, during the time periods relevant to this case. Dep. of Dr. William Ross [258-4] at 8-9, 23-24.

Dr. Ross visited the ADC on Tuesday mornings and would see all patients with complaints who were presented to him by the ADC's nursing staff. *Id.* at 10, 12-13. According to Dr. Ross, he "would see any [patients at the ADC] that the nurse felt that [he] needed to see." *Id.* at 14.

"If the nurse gave [Dr. Ross] a report and [he] didn't feel comfortable with what was reported, [he] would ask to see them, and [the nurse] would make sure that [he] saw them." *Id.* at 14-15. If an urgent need arose while Dr. Ross was not at the ADC, the nurses would send the patient to the emergency room. *Id.* at 17-18. "And if [the nurses] were iffy about whether or not they should go, [the nurses] would counsel [Dr. Ross] by phone, and [Dr. Ross] would give advice to go or not." *Id.* at 18.

As a general matter, Dr. Ross did not recall seeing ADC patients' initial intake forms. *Id.* at 18, 49-50. "The forms were not presented to [him]." *Id.* at 71. Dr. Ross instead reviewed the medical history of patients which were "garnered by the nurse." *Id.* at 18.

According to Dr. Ross, when someone incarcerated at the ADC submitted a request or a "kite" seeking the initiation of medications for conditions that were chronic and ongoing, "[t]he nurse will usually present [Dr. Ross] with the statement that the patient has requested and that she has submitted request for backup medical information." *Id.* at 29. "The kites were submitted to the nurses, and the nurses deemed those that needed to be brought to [Dr. Ross]." *Id.* at 72. Dr. Ross never personally reviewed these kites. *Id.* at 72-73.

3

2.  The ADC's nurses and work performed at the ADC

At all times relevant to this case, Defendant Jona Crowley was a registered nurse ("RN") who worked as the ADC's "staff nurse" or "head nurse." Dep. of Jona Crowley [258-2] at 6. Junna Jackson and Kristi Bourn were licensed practical nurses, and Kelli Tassin was a registered nurse, all of whom also worked at the ADC. Dep. of Jona Crowley [258-2] at 52; Dep. of Junna Jackson [258-3] at 4, 22.

When nurses received an inmate request for treatment, "any of the nurses could have answered the kites." Dep. of Jona Crowley [258-2] at 9. "[T]he only time [Crowley] would have had face-to-face contact with an inmate was on Tuesdays, with the doctor, unless it was an emergency." *Id.* at 12.

According to Crowley, protocol was that if an inmate responded on an ADC questionnaire or informed one of the nurses to the effect that he had been prescribed medication that he did not have with him, the inmate needed to complete a Release of Information ("ROI") form in order for the ADC to obtain additional information. *Id.* at 13-14. Likewise, when an ADC inmate requested prescription medication, Crowley explained that the inmate was required to sign a ROI form in order for the ADC staff to determine what medications the inmates had been prescribed. *Id.* at 9-10. The ROI was then sent to the inmate's doctor or hospital. *Id.* at 10.

When the ADC medical staff received the records back from the inmate's physician, Crowley would read over them and place them in Dr. Ross's bin for review when he came in on Tuesdays. *Id.* at 10, 55-56. According to Crowley, if

something came up that needed attention before Tuesday, she would call Dr. Ross, or send the inmate to the emergency room if the inmate needed immediate medical attention. *Id.* at 10-11. Dr. Ross described Crowley as a "triage nurse" who would evaluate inmates "and see when and how much treatment [was] necessary." Dep. of Dr. William Ross [258-4] at 60.

    3.    <u>Mr. Lee's medical treatment at the ADC</u>

Mr. Lee's December 5, 2012, Booking Medical Sheet at the ADC listed a "Dr. McLossky" as his doctor. Booking Medical Sheet [258-1] at 19. The Booking Medical Sheet disclosed that Mr. Lee had, either in the present or the past, suffered from epilepsy, fainting spells, heart condition, high blood pressure, and seizures. *Id.* The Booking Medical Sheet reflected that Mr. Lee was prescribed medication by a doctor for high blood pressure and seizures. *Id.* at 19-20. However, the Booking Medical Sheet did not list any specific medications Mr. Lee took, nor did it specifically identify what medical provider had prescribed any such medications or what pharmacy Mr. Lee used to fill prescriptions. *See id.*

Mr. Lee had previously been incarcerated at the ADC on several different occasions, for one day in May 2011, *see* Booking Sheet [258-1] at 29-30, Release Sheet [258-1] at 42-43; from June to October 2011, *see* Booking Sheet [258-1] at 27-28, Release Sheet [258-1] at 39-40; and from January to April 2012, *see* Booking Sheet [258-1] at 25-26, Release Sheet [258-1] at 36-37. While Mr. Lee was incarcerated at the ADC in June through October 2011, the ADC's Medication Administration Records noted that Mr. Lee had been prescribed Lanoxin 0.25 mg by

a Dr. Hudson and three Dilantin 100 mg daily by a Dr. Simmons.  Medication Record [258-1] at 59-62.  During Mr. Lee's incarceration from January to April 2012, the ADC's Medication Administration Records indicated that Mr. Lee had been prescribed one Digoxin 25 mg and three Dilantin 100 mg daily by a Dr. Emerick.  Medication Record [258-1] at 56-58.

On January 6, 2013, during his final incarceration at the ADC, Mr. Lee submitted an inmate request, also known informally as a "kite," which read as follows:

> I have a pass [sic] record her [sic] at the ADC, will you check my record and you will see my medical history.  I need to be place [sic] back on my seziuer [sic] and heart M.E.D.S. [sic] please.
> (1)  I take Loxian [sic] 0.25 mg 1 time a day → mornings.
> (2)  I take Dilantin 100 mg 3 time [sic] a day → give all 3 at night.

Inmate Request [258-1] at 54.  On January 7, 2013, Crowley responded to Mr. Lee's request as follows:

> Where are your meds?
> Have them brought to ADC.
> Sign ROI to your Dr[.]

*Id.*; *see also* Dep. of Jona Crowley [258-2] at 16, 58 (identifying this response as hers). When asked in her deposition if she had informed Dr. Ross of Mr. Lee's January 6, 2013, request, Crowley testified, "I don't believe so."  Dep. of Jona Crowley [258-2] at 49.

In an inmate request submitted on January 8, 2013, Mr. Lee stated that:

> I was told by your [illegible] staff "nurse" to write a kite to the head nurse Mrs. Jonna [sic]: To inform her that I needed to be place[d] back on my medication which the A.D.C. medical records should show from

6

> my pass [sic] records from Dr. Ross.  Please look into this matter.  My health condition is life threaten[ing].  I need to see a doctor.
>
> * * *
>
> P.S.  Read the response on back page.  Sir, if I had my on [sic] medication I wouldn't never ask [sic] the nurse Mrs. Jonna [sic] to place me back on my M.E.D. [sic]

Inmate Request [258-1] at 55.  The ADC response bearing the stamp of Captain Ray Bates read:

> She told you what you need to do.  We can't give you meds w/o a prescription regardless of past records.  Have someone bring them or sign a Release of Information.

*Id.*

On February 22, 2013, Mr. Lee completed another inmate request.  Inmate Request [258-1] at 48.  Mr. Lee stated as follows:

> I need to see a doctor soon.  I've been have-ing [sic] seizures from the brain surgery in 1994.  I have an A.V.M. on my brain.  I haven't been under a doctor lately only at the Singing River E.R.  I also have same problem with my heart condition.  I have A-fib heart failure.  I'm having cool sweats and my blood pressure is low.  Or please ask the nurse to send me a release of information to send to Singing River Hospital E.R. for my medical record please.

*Id.*  The unsigned response provided was that the "ROI has been sent already.  See nurse at cart to check B/P / pulse if needed."  *Id.*

On that same date, on February 22, 2013, Mr. Lee signed an ROI for his medical records from Singing River Hospital.  ROI [258-1] at 49.  The ADC records indicate that the ROI was faxed, presumably to Singing River Hospital, at 4:38 p.m. that day.  *Id.* at 50.

With respect to the February 22, 2013, inmate request, counsel asked Crowley at her deposition "would it have been proper protocol to notify the doctor

7

that [Mr. Lee was] having seizures?" Dep. of Jona Crowley [258-2] at 41.  Crowley responded "[w]e notify him when you get the release of records, you get the records in." *Id.*  Instead of notifying Dr. Ross of a specific inmate request, Crowley testified that "protocol was to get the records for Ross to review and make the decision what meds he's been on and what we're going to put them back on." *Id.* at 44.

Crowley was asked if she had any reason to believe that Dr. Ross was advised of any issue that Mr. Lee was having with seizures during his last incarceration at the ADC.  Dep. of Jona Crowley [258-2] at 56.  Crowley responded, "I have no idea." *Id.* at 56-57.  Junna Jackson was also asked in her deposition whether she had any reason to believe that Dr. Ross would have seen Mr. Lee's request for medication without his records having first come back from Singing River Hospital.  Dep. of Junna Jackson [258-3] at 26.  Jackson replied in the negative.  *Id.*  Jackson agreed that that it "would have been very unusual for that to have occurred." *Id.*  There is no evidence that Dr. Ross was aware of Mr. Lee's requests for anti-seizure and heart medications.

On February 24, 2013, at approximately 7:11 a.m., inmates advised ADC staff that they needed assistance in the day room.  Investigative Report [258-1] at 7.  Responding deputies reported that Mr. Lee was having a seizure, was unresponsive and drooling at the mouth and gasping for breath.  *Id.*  ADC staff called for an ambulance.  *Id.*  After some treatment was administered at ADC, Acadian Ambulance Service transported Mr. Lee to Singing River Hospital.  *Id.*  Mr. Lee was pronounced dead at the hospital at 8:23 a.m.  *Id.* at 8.

B.     Procedural history

Plaintiff Dorothy Lee filed a Complaint [1] in this Court on November 25, 2013, as wife and personal representative of the wrongful death beneficiaries of Mr. Lee and of Mr. Lee's estate.  John Morris Lee, III, has intervened as a party Plaintiff as the son and wrongful death beneficiary of Mr. Lee.  Order [23] at 1. Plaintiffs have twice amended the Complaint.  On January 11, 2016, Plaintiffs filed a Second Amended Complaint [109], which is the operative pleading.

The Second Amended Complaint [109] named as Defendants Jackson County, Mississippi ("Jackson County"), Travelers Casualty and Surety Company of America ("Travelers"), Jona Crowley, Sid Ross, Kristi Bourn, Kelli Tassin, Junna Jackson, and Linda Richardson.  2d Am. Compl. [109] at 1.  Travelers, Bourn, Tassin, Jackson, and Richardson have since been dismissed from this action.  Order [170] at 3; Stipulation [253] at 1-4.

The Second Amended Complaint appears to assert claims against Dr. Ross under 42 U.S.C. § 1983.[2]  Plaintiffs charge that Dr. Ross and other Defendants

---

[2]     In this case, Plaintiffs' counsel has used what could best be described as a "shotgun approach" to pleading.  This Court has previously admonished counsel for this approach which "treads dangerously close to Rule 11 territory." *Pardue v. Jackson Cty.*, Miss., No. 1:14-cv-290-KS-MTP, 2016 WL 3024153, *14 (S.D. Miss. May 25, 2016) (citing *S. Leasing Partners, Ltd. v. McMullan*, 801 F.2d 783, 788 (5th Cir. 1986)); *see also Tuskan v. Jackson Cty., Miss.*, No. 1:13cv356-HSO-RHW, Order [99] at 4 n.4 (S.D. Miss. June 24, 2016); *Peairs v. Jackson Cty., Miss.*, No. 1:13cv402-HSO-RHW, Order [106] at 4 n.3 (S.D. Miss. Aug. 11, 2016).

     The Second Amended Complaint [109] cites 42 U.S.C. §§ 1985 and 1986, and lumps all Defendants into a formulaic recitation of certain elements of these claims.  *See* 2d Am. Compl. [109] at 9-10, 13-16, 20.  To state a claim under § 1985(3), a plaintiff must allege facts demonstrating "(1) a conspiracy; (2) for the purpose of depriving a person of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or a deprivation of any right or privilege of a citizen of the United States." *Lockett v. New Orleans City*, 607 F.3d 992, 1002 (5th Cir. 2010).  In addition, "a

9

"were either directed or allowed by the Jackson County Sheriff's Department to ignore Decedent's basic medical needs, medical care and medical treatment without repercussion . . . ." 2d Am. Compl. [109] at 8.  According to the Second Amended Complaint, Ross and other Defendants

> are individually liable as their actions, under color of law, and pursuant to the policies, practices and customs of the Jackson County Sheriff's Department, were deliberately indifferent to a substantial risk of serious harm to Decedent, and they are liable for punitive damages as their conduct constitutes reckless or callous indifference to Decedent's federally-protected rights.

*Id.* at 12-13.

Dr. Ross now moves for summary judgment, seeking dismissal from this case.

## II.  DISCUSSION

A.  <u>Dr. Ross's Motion [258] for Summary Judgment should be granted.</u>

1.  <u>Relevant legal standards</u>

Rule 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  If the movant

---

violation under § 1985 requires class-based, invidiously discriminatory animus behind the conspirator's action." *Moffett v. Bryan*, 751 F.3d 323, 326 (5th Cir. 2014) (quotation omitted); *see also Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir. 1998) (discussing intracorporate conspiracy doctrine).  As for a claim under § 1986, "a valid § 1985 claim is a prerequisite to a § 1986 claim . . . ." *Bryan v. City of Madison, Miss.*, 213 F.3d 267, 276 (5th Cir. 2000).

The Second Amended Complaint contains no specific allegation as to Dr. Ross to support any claim against him under 42 U.S.C. §§ 1985 or 1986.  Even if it did, Plaintiffs have failed to plead sufficient facts to plausibly demonstrate a conspiracy or any sort of class-based discriminatory animus behind the alleged conspirators' actions.  The parties have only addressed claims against Dr. Ross under § 1983.  Moreover, in response to the Motion for Summary Judgment [256] filed by Defendants Jackson County and Jona Crowley, Plaintiffs concede that summary judgment should be granted as to the claims against Jackson County and Crowley under §§ 1985 and 1986.  Pls.' Mem. [278] at 27.

10

carries this burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there exists a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). "A genuine dispute of material fact means that evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Royal v. CCC&R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (quotation omitted). If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co.*, 671 F.3d 512, 516 (5th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). In deciding whether summary judgment is appropriate, the Court views facts and inferences in the light most favorable to the nonmoving party. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 858 (5th Cir. 2010).

It is undisputed that, at the time of his death, Mr. Lee was a pretrial detainee, as opposed to a convicted inmate. "The constitutional rights of a pretrial detainee are found in the procedural and substantive due process guarantees of the Fourteenth Amendment." *Estate of Henson v. Wichita Cty., Tex.*, 795 F.3d 456, 462 (5th Cir. 2015). "[T]he legal standard used to measure the due process rights of pretrial detainees depends on whether the detainee challenges the constitutionality

of a condition of his confinement or whether he challenges an episodic act or omission of an individual state official." *Id.*

      2.    <u>Plaintiffs' claims against Dr. Ross are episodic-acts-or-omissions claims.</u>

"A challenge to a condition of confinement is a challenge to 'general conditions, practices, rules, or restrictions of pretrial confinement.'" *Estate of Henson*, 795 F.3d at 463. To evaluate whether a plaintiff has stated a condition-of-confinement claim, a court "asks whether the condition is 'reasonably related to a legitimate governmental objective.'" *Id.* A plaintiff must demonstrate:

> (1) "a rule or restriction or . . . the existence of an identifiable intended condition or practice . . . [or] that the jail official's acts or omissions were sufficiently extended or pervasive"; (2) which was not reasonably related to a legitimate governmental objective; and (3) which caused the violation of [a detainee's] constitutional rights.

*Id.* at 468 (quoting *Duvall v. Dallas Cnty.*, 631 F.3d 203, 207 (5th Cir. 2011)).

"An episodic-acts-or-omissions claim, by contrast, 'faults specific jail officials for their acts or omissions.'" *Id.* at 463. "In such a case, an actor is interposed between the detainee and the municipality, such that the detainee complains first of a particular act of, or omission by, the actor and then points derivatively to a policy, custom, or rule (or lack thereof) of the municipality that permitted or caused the act or omission." *Id.* (quotation omitted).

With an episodic-acts-or-omissions claim, "[t]he relevant question becomes whether that official breached his constitutional duty to tend to the basic human needs of persons in his charge . . . ." *Id.* at 463-64 (quotation omitted).

> A jail official violates a pretrial detainee's constitutional right to be secure in his basic human needs only when the official had subjective knowledge of a substantial risk of serious harm to the detainee and responded to that risk with deliberate indifference. In other words, the state official must know of and disregard an excessive risk to inmate health or safety. [T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 464 (quotations and citations omitted).

In this case, the Second Amended Complaint [109] asserts that "Defendants' actions show deliberate indifference to Decedent's medical and health-related needs." 2d Am. Compl. [109] at 6. The Second Amended Complaint [109] alleges that Dr. Ross "demonstrated a deliberate indifference to the constitutional rights of the ADC inmates and pre-trial detainees, including Decedent . . . ." *Id.* at 13-14. Plaintiffs' claims against Dr. Ross are appropriately addressed as episodic-acts-or-omissions claims.

   3. <u>Dr. Ross is entitled to summary judgment on Plaintiffs' claims.</u>

Having reviewed the entire summary judgment record, and viewing all facts and inferences in the light most favorable to Plaintiffs as the nonmoving parties, *see RSR Corp.*, 612 F.3d at 858, there is insufficient evidence that Dr. Ross had subjective knowledge of a substantial risk of serious harm to Mr. Lee or that he responded to that risk with deliberate indifference, *see Estate of Henson*, 795 F.3d at 464. Plaintiffs have not presented sufficient competent summary judgment proof to demonstrate that Dr. Ross knew of and disregarded an excessive risk to Mr. Lee's health or safety. *See id.*

There is no indication in the record that Dr. Ross was ever presented with Mr. Lee's initial intake form.  *See* Dep. of Dr. William Ross [258-4] at 18, 49-50, 71.  Had Dr. Ross received information from Mr. Lee's December 5, 2012, Booking Medical Sheet, he testified that he "would have wrote an order to acquire prior history, so that we could initiate treatment," including "[b]lood pressure medicine and heart medicine and seizure medicine."  *Id.* at 48-50.

According to Dr. Ross, he did not receive any information during Mr. Lee's last incarceration regarding Mr. Lee's need for Dilantin anti-seizure medication, and Dr. Ross had not received an initiation request for the medication.  *Id.* at 43-44.  If Dr. Ross would have received such a request from the ADC, Dr. Ross testified in his deposition that he would have initiated Mr. Lee's anti-seizure medication.  *Id.*  Plaintiffs have not presented any evidence which rebuts Dr. Ross's testimony.

Plaintiffs rely upon the proffered opinions of Dr. Michael Stevens to support their assertion that Dr. Ross breached the applicable standard of care.  *See* Pls.' Mem. [277] at 2, 11-15; *see also* Dr. Stevens' Statement [274-12] at 1-4; Dr. Stevens' Suppl. Statement [274-13] at 1-6.  A breach of the medical standard of care, however, does not rise to the level of unconstitutional deliberate indifference.  Medical malpractice and acts of negligence do not constitute deliberate indifference.  *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006); *see also Blank v. Bell*, 634 F. App'x 445, 448 (5th Cir. 2016).

Plaintiffs rely upon Dr. Stevens' opinion that Dr. Ross acted with deliberate indifference in various aspects of Mr. Lee's medical treatment at the ADC.  *See*

Mem. [277] at 11-12; *see also* Dr. Stevens' Suppl. Statement [274-13] at 2-5.[3] Plaintiffs do not provide a record citation to this opinion. *See* Mem. [277] at 11-12. However, the Court has found that in Dr. Stevens' Supplemental Statement, Dr. Stevens states that he has "been asked by [counsel] to opine on the issue of deliberate indifference." Dr. Stevens' Suppl. Statement [274-13] at 2. Dr. Stevens then outlines what he believes were breaches in the standard of care, *id.* at 2-3, and discusses case law and factors courts use to determine whether an official acted with deliberate indifference, *id.* at 5. Dr. Stevens concludes that

> "Deliberate Indifference" criteria is [sic] met on three categories. Dr. Ross denied the patient of professional medical judgment, Dr. Ross delayed the patient's access to a physician, and Dr. Ross failed to administer treatment.

*Id.* at 4.

The Court is not persuaded that Dr. Stevens' conclusory opinions are sufficient to defeat summary judgment. "Deliberate indifference" is a "legal term." *Stewart v. Murphy*, 174 F.3d 530, 541 n.9 (5th Cir. 1999). "Standing alone, an expert's opinion is generally not enough to establish deliberate indifference." *Thompson v. Upshur Cty., TX*, 245 F.3d 447, 459 (5th Cir. 2001).

None of the record evidence in this case establishes the requisite "*Farmer* link" as to Dr. Ross, *see Farmer v. Brennan*, 511 U.S. 825, 837 (1994), or that Dr. Ross consciously disregarded a substantial risk of harm to Mr. Lee, *see Doe v. United States*, 831 F.3d 309, 320 (5th Cir. 2016).

---

[3] In his original report, Dr. Stevens generally opined that "[t]he medical care [Mr. Lee] received was inadequate and reflects a reckless disregard for human life." Dr. Stevens' Statement [274-12] at 4.

> The test for deliberate indifference is subjective: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference" — in other words, the official must "consciously disregard[ ]" the substantial risk.

*Id.* (quoting *Farmer*, 511 U.S. at 837, 839).  The record lacks competent proof that Dr. Ross was himself aware of a substantial risk of harm to Mr. Lee.  Conclusory assertions of deliberate indifference, without evidence tending to show that Dr. Ross knew of a substantial risk to Mr. Lee's health and disregarded it deliberately, are insufficient.

Dr. Stevens' reports fault Dr. Ross for what he did not do, or did not learn, in relation to Mr. Lee's care at the ADC.  The Fifth Circuit, however, has adopted the Eleventh Circuit's analysis that, "when there is no direct or circumstantial evidence from which a jury could infer actual knowledge, 'allowing expert testimony that [the defendant] should or would have known to raise a jury issue as to whether he actually knew effectively would nullify *Farmer*'s requirement of subjective mental intent."  *Williams v. Hampton*, 797 F.3d 276, 292 (5th Cir. 2015) (quoting *Campbell v. Sikes*, 169 F.3d 1353, 1370-71 (11th Cir. 1999)).

While Plaintiffs rely upon evidence that Mr. Lee had been prescribed the same or similar medications during previous incarcerations at the ADC, the Court is not persuaded that this fact tends to show that Dr. Ross was subjectively aware of or deliberately indifferent to Mr. Lee's medical and health-related needs during his last incarceration at the ADC.  Based upon the summary judgment record, a reasonable inference cannot be drawn that Dr. Ross was deliberately indifferent.

Without evidence that Dr. Ross was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and that Dr. Ross actually drew that inference, Plaintiffs' § 1983 deliberate indifference claims against Dr. Ross fail.  *See Doe*, 831 F.3d at 320.[4]  Summary judgment in Dr. Ross's favor is warranted.

B.  Dr. Ross's Motion [254] to Strike Testimony and Supplemental Expert Report of Michael Stevens, D.O., and Motion [265] to Strike Supplemental Witnesses are moot.

In light of the Court's decision to grant Dr. Ross's Motion for Summary Judgment, his Motions [254], [265] to Strike are rendered moot.  Plaintiffs' claims against Dr. Ross will be dismissed with prejudice.

## III.  CONCLUSION

To the extent the Court has not addressed any of the parties' arguments, it has considered them and determined that they would not alter the result.  The Court concludes that Dr. Ross's Motion [258] for Summary Judgment should be granted, that Plaintiffs' claims against Dr. Ross should be dismissed in their entirety, and that Dr. Ross's Motion [254] to Strike Testimony and Supplemental Expert Report of Michael Stevens, D.O., and Motion [265] to Strike Supplemental Witnesses should be denied as moot.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Motion [258] for Summary Judgment filed by Defendant Dr. Sid Ross is **GRANTED**, and

---

[4] Nor have Plaintiffs pointed to any competent summary judgment evidence that suggests that Dr. Ross was willfully blind to impending harm to Mr. Lee.  *See Manarite v. City of Springfield*, 957 F.2d 953, 956 (1st Cir. 1992).

Plaintiffs' claims against Defendant Dr. Sid Ross are **DISMISSED WITH PREJUDICE**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that the Motion [254] to Strike Testimony and Supplemental Expert Report of Michael Stevens, D.O., filed by Defendant Dr. Sid Ross is **DENIED AS MOOT**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that the Motion [265] to Strike Supplemental Witnesses filed by Defendant Dr. Sid Ross is **DENIED AS MOOT**.

**SO ORDERED AND ADJUDGED**, this the 29th day of December, 2016.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE