IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| **DOROTHY LEE,** *as Wife and* | § | |
| *Personal Representative of John* | § | |
| *Morris Lee, Jr. and Estate of John* | § | |
| *Morris Lee, Jr., Deceased,* **and** | § | |
| **JOHN MORRIS LEE, III,** *as Son* | § | |
| *and Wrongful Death Beneficiary* | § | |
| *of John Morris Lee, Jr., Deceased* | § | **PLAINTIFFS** |
| | § | |
| | § | |
| **v.** | § | **Civil No. 1:13cv441-HSO-RHW** |
| | § | |
| | § | |
| **JACKSON COUNTY,** | § | |
| **MISSISSIPPI,** *et al.* | § | **DEFENDANTS** |

<u>**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS JACKSON COUNTY AND
JONA CROWLEY'S [260] MOTION TO STRIKE PLAINTIFFS' EXPERT
DR. LORI E. ROSCOE; GRANTING IN PART AND DENYING IN PART
DEFENDANTS JACKSON COUNTY AND JONA CROWLEY'S
[256] MOTION FOR SUMMARY JUDGMENT; AND DENYING AS MOOT
DEFENDANT JACKSON COUNTY'S [267] MOTION
TO STRIKE SUPPLEMENTAL WITNESSES**</u>

**BEFORE THE COURT** are the Motion [260] to Strike Plaintiffs' Expert Dr.

Lori E. Roscoe and the Motion [256] for Summary Judgment filed by Defendants

Jackson County, Mississippi, and Jona Crowley, and the Motion [267] to Strike

Supplemental Witnesses [267] filed by Defendant Jackson County, Mississippi.

These Motions are fully briefed.

Having considered the Motions, related pleadings, the record, and relevant

legal authority, the Court is of the opinion that the Motion [260] to Strike Plaintiffs'

Expert Dr. Roscoe should be granted in part and denied in part, that the Motion

[256] for Summary Judgment should be granted in part and denied in part, and that the Motion [267] to Strike Supplemental Witnesses should be denied as moot. Dr. Roscoe will be prohibited at trial from testifying about Jackson County's purported breaches of care and medical causation and from drawing a legal conclusion regarding "deliberate indifference." Plaintiffs' claims against Crowley pursuant to 42 U.S.C. §§ 1985 and 1986 should be dismissed with prejudice, and all claims against Jackson County should be dismissed with prejudice. Plaintiffs' claims against Crowley pursuant to 42 U.S.C. § 1983 will proceed to trial.

## I. BACKGROUND

A.    Factual background

This case arises out of the unfortunate death of John Morris Lee, Jr. ("Mr. Lee" or "Decedent") on February 24, 2013, while he was incarcerated at the Jackson County Adult Detention Center ("ADC") in Pascagoula, Mississippi. Mr. Lee was arrested and booked into the Pascagoula City Jail on December 1, 2012, on a felony shoplifting charge. Release Sheet [256-1] at 1. On December 5, 2012, Mr. Lee was transferred to the ADC. *Id.*; Booking Sheet [256-2] at 1. On February 24, 2013, at approximately 7:11 a.m., other inmates summoned deputies to the dayroom where Mr. Lee was located. Death Investigation [256-11] at 1. Mr. Lee was reportedly having a seizure and was found unresponsive and gasping for breath. *Id.* Emergency medical technicians arrived at approximately 7:18 a.m. and took over cardio pulmonary resuscitation. *Id.* at 1-2. At approximately 7:58 a.m., Mr. Lee

was transported via ambulance to the Singing River Hospital emergency room, where he was pronounced dead at 8:23 a.m. *Id.*

At all relevant times, Defendant Jona Crowley was a registered nurse ("RN") working as the ADC's "staff nurse" or "head nurse." Dep. of Jona Crowley [256-12] at 6. Junna Jackson and Kristi Bourn were licensed practical nurses, and Kelli Tassin was a registered nurse, all of whom also worked at the ADC. *Id.* at 52.

When nurses would receive an inmate request or a "kite" at the ADC, "any of the nurses could have answered the kites." *Id.* at 9. "[T]he only time [Crowley] would have had face-to-face contact with an inmate was on Tuesdays, with the doctor, unless it was an emergency." *Id.* at 12.

According to Crowley, protocol was that if an inmate responded on an ADC questionnaire or informed one of the nurses that he had been prescribed medication that he did not have with him, a Release of Information ("ROI") form would need to be completed by the inmate in order for the ADC to obtain additional information. *Id.* at 13-14. Likewise, when an ADC inmate requested prescription medication Crowley explained that the inmate was required to sign an ROI form in order for the ADC staff to determine what medications the inmate had been prescribed. *Id.* at 9-10. The ROI was then sent to the inmate's doctor or hospital. *Id.* at 10.

When the ADC medical staff received the records back from the inmate's physician, Crowley would read over them and place them in the bin of the ADC's contract physician, Dr. Sid Ross ("Dr. Ross"), for review when he came in to the ADC on Tuesdays. *Id.* at 10, 55-56. According to Crowley, if something came up

3

that needed attention before Tuesday, she would call Dr. Ross, or she would send the inmate to the emergency room if immediate medical care was necessary.  *Id.* at 10-11.

Mr. Lee's December 5, 2012, Booking Medical Sheet at the ADC listed a "Dr. McLossky" as his doctor.  Booking Medical Sheet [256-3] at 1.  The Booking Medical Sheet disclosed that Mr. Lee had, either at the time or in the past, suffered from epilepsy, fainting spells, a heart condition, high blood pressure, and seizures.  *Id.* The Booking Medical Sheet stated that Mr. Lee was taking medication prescribed by a doctor, specifically medications for high blood pressure and seizures.  *Id.* at 1-2. However, the Booking Medical Sheet did not list any specific medications Mr. Lee took, nor did it specifically identify what medical provider had prescribed such medications or what pharmacy Mr. Lee used to fill his prescriptions.

Mr. Lee had been incarcerated at the ADC on several previous occasions.[1] While Mr. Lee was incarcerated at the ADC during the months of July through October 2011, the ADC's Medication Administration Records noted that Mr. Lee had been prescribed Lanoxin 0.25 mg by a Dr. Hudson and three Dilantin 100 mg daily by a Dr. Simmons.  Medication Records [271-4] at 4-7.  During another period of incarceration from January to April 2012, the ADC's Medication Administration

---

[1] Evidence supplied by former Defendant Dr. Ross in support of his Motion for Summary Judgment [258] demonstrates that Mr. Lee had been incarcerated at the ADC for one day in May 2011, *see* Booking Sheet [258-1] at 29-30, Release Sheet [258-1] at 42-43; from June to October 2011, *see* Booking Sheet [258-1] at 27-28, Release Sheet [258-1] at 39-40; and from January to April 2012, *see* Booking Sheet [258-1] at 25-26, Release Sheet [258-1] at 36-37.

Records indicated that Mr. Lee had been prescribed one Digoxin 25 mg and three

Dilantin 100 mg daily by a Dr. Emerick.   *Id.* at 1-3.

On January 6, 2013, during his final incarceration at the ADC, Mr. Lee

submitted an inmate request which read as follows:

> I have a pass [sic] record her [sic] at the ADC, will you check my record
> and you will see my medical history.  I need to be place [sic] back on my
> seziuer [sic] and heart M.E.D.S. [sic] please.
> (1)  I take Loxian [sic] 0.25 mg 1 time a day → mornings.
> (2)  I take Dilantin 100 mg 3 time [sic] a day → give all 3 at night.

Inmate Request [271-2] at 1.  On January 7, 2013, Crowley responded to Mr. Lee's

request as follows:

> Where are your meds?
> Have them brought to ADC.
> Sign ROI to your Dr[.]

*Id.*; *see also* Dep. of Jona Crowley [256-12] at 16, 58 (identifying this response as

hers).  When asked in her deposition if she had informed Dr. Ross of Mr. Lee's

January 6, 2013, request, Crowley testified, "I don't believe so."  Dep. of Jona

Crowley [256-12] at 49.

According to Crowley, Linda Richardson from the ADC had contacted Mr.

Lee's sister about the medications, but no one was willing to bring his medications

to the ADC.  *Id.* at 59.  It is unclear from the record when this purported contact

with Mr. Lee's sister occurred.

Crowley was asked at her deposition whether she had checked Mr. Lee's

medical history after receiving Mr. Lee's January 6, 2013, kite.  *Id.* at 17.  Crowley

testified as follows:

A.    Those are -- those weren't at our disposal.  Those were being stored, like, from a previous time he was there, those records, when he left, are taken out of medical, scanned in, and they're stored at the Homeport.

Q.    Okay. Where are they scanned into?

A.    They're scanned into the computer.

Q.    Can you look on the computer?

A.    You can look on the computer.

Q.    Did you look on the computer?

A.    I don't remember.

Q.    So you did have access to them?

A.    I'm sure I had access.

Q.    Okay.  And so you are sure you had access to his previous medical records?

A.    If they were scanned in.

* * *

[Q.]   Don't you think it would be prudent to look at his previous records?

A.    I would agree, yes.

Q.    So if he's complaining of seizures and he's had -- you all had possession, the Jackson County ADC had possession of his medical records, do you think it would be a good idea to look at his medical records?

A.    I would have reviewed them.

Q.    But you don't know if you did or not?

A.    No.  I don't remember.

*Id.* at 17-19.

In an inmate request submitted on January 8, 2013, Mr. Lee stated that:

I was told by your [illegible] staff "nurse" to write a kite to the head nurse Mrs. Jonna [sic]:  To inform her that I needed to be place[d] back on my medication which the A.D.C. medical records should show from my pass [sic] records from Dr. Ross.  Please look into this matter.  My health condition is life threaten[ing].  I need to see a doctor.

* * *

P.S.  Read the response on back page.  Sir, if I had my on [sic] medication I wouldn't never ask [sic] the nurse Mrs. Jonna [sic] to place me back on my M.E.D. [sic]

Inmate Request [271-2] at 2.  The ADC response bearing the stamp of Captain Ray Bates read:

> She told you what you need to do.  We can't give you meds w/o a prescription regardless of past records.  Have someone bring them or sign a Release of Information.

*Id.*  It is unclear from the record whether Crowley ever saw this particular request and response prior to Mr. Lee's death, but according to Crowley's deposition testimony, it appears that she may not have received Mr. Lee's January 8, 2013, kite.  Dep. of Jona Crowley [256-12] at 21 ("The next one was Kelli.  I didn't see that.").[2]

On February 22, 2013, Mr. Lee completed another inmate request.  Inmate Request [271-2] at 3.  Mr. Lee stated as follows:

> I need to see a doctor soon.  I've been have-ing [sic] seizures from the brain surgery in 1994.  I have an A.V.M. on my brain.  I haven't been under a doctor lately only at the Singing River E.R.  I also have same problem with my heart condition.  I have A-fib heart failure.  I'm having cool sweats and my blood pressure is low.  Or please ask the nurse to send me a release of information to send to Singing River Hospital E.R. for my medical record please.

*Id.*  The unsigned response to Mr. Lee's Kite stated that the "ROI has been sent already.  See nurse at cart to check B/P / pulse if needed."  *Id.*  It is not clear from the record who at the ADC drafted this response or whether Crowley ever saw this kite or response prior to Mr. Lee's death.  Crowley testified that she did not recognize the handwriting, but that is was one of the other nurses who worked at the ADC.  Dep. of Jona Crowley [256-12] at 52.

---

[2] It is not completely clear from Crowley's deposition to which kite she was referring, but when read in context, it appears that Crowley may have been referring to the January 8, 2013, kite.  *See* Dep. of Jona Crowley [256-12] at 21.

The same day, on February 22, 2013, Mr. Lee signed an ROI for his medical records from Singing River Hospital.  ROI [271-12] at 1.  ADC records indicate that the ROI was faxed, presumably to Singing River Hospital, at 4:38 p.m. that day.  *Id.* at 50.[3]

With respect to Mr. Lee's February 22, 2013, request, counsel asked Crowley at her deposition "would it have been proper protocol to notify the doctor that [Mr. Lee was] having seizures?"  Dep. of Jona Crowley [256-12] at 41.  Crowley responded "[w]e notify him when you get the release of records, you get the records in."  *Id.*  Instead of notifying Dr. Ross of a specific inmate request, Crowley testified that "protocol was to get the records for Ross to review and make the decision what meds he's been on and what we're going to put them back on."  *Id.* at 44.

Crowley was asked if she had any reason to believe that Dr. Ross was advised of any issue that Mr. Lee was having with seizures during his last incarceration at the ADC.  Dep. of Jona Crowley [256-12] at 56.  Crowley responded, "I have no idea."  *Id.* at 56-57.

As for the delay in completing the ROI, Crowley testified:

> [t]hat's one of the things that I don't understand because he had been there before and he knew procedures, and he knew what a Release of Information was.  And it was available to him from day one on the cart twice a day.  So I don't know why he waited.

*Id.* at 20-21.  According to Crowley, she never saw Mr. Lee during his last incarceration.  *Id.* at 60.  Mr. Lee had "[n]o face-to-face with [Crowley]."  *Id.*

---

[3] Plaintiffs allege in opposition to summary judgment that "the hospital later denied that it had received a fax from the ADC during Lee's last period of detention."  Mem. [278] at 4.  Plaintiffs do not cite any record evidence to support this assertion.  *See id.*

On February 24, 2013, at approximately 7:11 a.m., inmates advised ADC staff that they needed assistance in the day room.  Death Investigation [256-11] at 1.  Responding deputies reported that Mr. Lee was having a seizure and was unresponsive and gasping for breath.  *Id.*  ADC staff called for an ambulance.  *Id.*  After some treatment was administered at ADC, Acadian Ambulance Service transported Mr. Lee to Singing River Hospital.  *Id.*  Mr. Lee was pronounced dead at the hospital at 8:23 a.m.  *Id.* at 8.

B.   Procedural history

Plaintiff Dorothy Lee filed a Complaint [1] on November 25, 2013, as wife and personal representative of the wrongful death beneficiaries of Mr. Lee and of Mr. Lee's estate.  John Morris Lee, III, has intervened as a party Plaintiff as the son and wrongful death beneficiary of Mr. Lee.  Order [23] at 1.  Plaintiffs have twice amended the Complaint.  On January 11, 2016, Plaintiffs filed a Second Amended Complaint [109], which is the operative pleading.

The Second Amended Complaint [109] named as Defendants Jackson County, Mississippi ("Jackson County"), Travelers Casualty and Surety Company of America ("Travelers"), Jona Crowley, Sid Ross, Kristi Bourn, Kelli Tassin, Junna Jackson, and Linda Richardson.  2d Am. Compl. [109] at 1.  Travelers, Bourn, Tassin, Jackson, Richardson, and Ross have since been dismissed.  Order [170] at 3; Stipulation [253] at 1-4; Order [302] at 17-18.

The Second Amended Complaint appears to assert claims against Jackson County and Crowley under 42 U.S.C. §§ 1983, 1985, 1986, and 1988.  2d Am. Compl.

[109] at 10-18.  Plaintiffs charge that Crowley and other Defendants "were either directed or allowed by the Jackson County Sheriff's Department to ignore Decedent's basic medical needs, medical care and medical treatment without repercussion . . . ."  *Id.* at 8.  According to Plaintiffs, Crowley and other Defendants

> are individually liable as their actions, under color of law, and pursuant to the policies, practices and customs of the Jackson County Sheriff's Department, were deliberately indifferent to a substantial risk of serious harm to Decedent, and they are liable for punitive damages as their conduct constitutes reckless or callous indifference to Decedent's federally-protected rights.

*Id.* at 12-13.

> The Second Amended Complaint also asserts that

> [t]he Jackson County Sheriff's Department failed to provide adequate and competent training and/or supervision of the deputies and other employees at the ADC, including Defendants Crowley, Ross, Bourn, Tassin, Jackson, and Richardson, during the time Decedent was detained at the ADC. Sheriff Byrd was tasked with the non-delegable duty and responsibility to formulate, oversee and implement official policies, procedures, practices and customs that are and were to be carried-out at the ADC by ADC employees, and Defendants Crowley, Ross, Bourn, Tassin, Jackson, and Richardson.  Defendant Jackson County has overall responsibility for the Jackson County Sheriff's Department and the ADC.

*Id.* at 16-17.  Jackson County and Crowley now seek summary judgment dismissal of all claims against them.

Plaintiffs have designated Dr. Lori E. Roscoe as an expert witness in the fields of correctional healthcare, healthcare maintenance, and standard corrections procedures.  Plaintiffs' expert designation of Dr. Roscoe discloses the following:

> 1.    Identity of Expert:  Dr. Roscoe is designated at this time and expected to testify as an expert in the fields of correctional healthcare, healthcare maintenance, and standard corrections procedures.  She is

also an expert on National Commission on Correctional Health Care and American Correctional Association Healthcare Standards. Dr. Roscoe's curriculum vitae is attached hereto and incorporated herein.

2.   Subject Matter: Dr. Roscoe will offer opinions which address the procedures followed by Defendants Dr. Sid Ross, Jona Crowley, Kristie Bourn, Kelli Tassin, and Linda Richardson, during decedent's last period of incarceration. Dr. Roscoe will offer opinions which will address the proper procedures that should have been followed based on the national standards in place at the time of decedent's incarceration. Dr. Roscoe will offer opinions which address Defendant Crowley's knowledge of decedent's serious life-threatening medical conditions and Defendant Crowley's failure to address those concerns. Dr. Roscoe's opinions are fully addressed in her expert report which address Defendant Jona Crowley's failures to comply with applicable regulatory standards in providing care for inmates and detainees at the Jackson County Adult Detention Center.

Pls.' Designation [274-14] at 1-2. Jackson County and Crowley now seek to strike certain of Dr. Roscoe's opinions. *See* Mot. [260].

Jackson County has also filed a Motion to Strike Supplemental Witnesses [267] which asks the Court to "strike the potential witnesses listed in [Plaintiff Dorothy Lee's] Supplemental Answers to Defendant Jackson County's First Set of Interrogatories as they were untimely disclosed and unresponsive to the discovery request." Mot. [267] at 1-2.

## II. DISCUSSION

A.   Jackson County and Crowley's Motion [260] to Strike Dr. Roscoe should be granted in part and denied in part.

Jackson County and Crowley move to strike Dr. Roscoe pursuant to Federal Rule of Civil Procedure 702. Mot. [260] at 1-2. Dr. Roscoe is an Advanced Practice Registered Nurse, certified as an Adult Nurse Practitioner. Dr. Roscoe's Report [260-1] at 1. Dr. Roscoe holds a doctorate degree in healthcare administration. *Id.*;

11

Dr. Roscoe's C.V. [260-1] at 9.  Dr. Roscoe anticipates receiving a doctorate in nursing practice in spring 2017.  Dr. Roscoe's C.V. [260-1] at 9.

Jackson County and Crowley specifically seek to exclude Dr. Roscoe's opinions that:

> (a) Jona Crowley was deliberately indifferent towards Lee's medical needs, (b) Jackson County failed to monitor the healthcare provided by the nursing staff at the ADC, (c) Jackson County failed to ensure the medical staff had appropriate policies and procedures, and (d) Jackson County failed to ensure that staff were properly trained to provide healthcare at the ADC.

Mem. [261] at 3.  Jackson County and Crowley argue that "insufficient evidence exists to support Roscoe's opinions of deliberate indifference against Jona Crowley," Mem. [261] at 7, and that Dr. Roscoe offers only bare conclusions or mere *ipse dixit* as to the County's liability, such that her opinions on this issue should be excluded, *id.* at 7-8 (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *Celestine v. Petroleos de Venez, SA*, 266 F.3d 343, 357 (5th Cir. 2001)).

Jackson County and Crowley also maintain that Dr. Roscoe is not qualified to offer any opinions on whether any action of Crowley or Jackson County proximately caused Mr. Lee's death on grounds that a nursing expert lacks the required qualifications to testify as to medical causation, specifically a patient's cause of death.  *Id.* at 8 (citing *Richardson v. Methodist Hosp. of Hattiesburg, Inc.*, 807 So. 2d 1244, 1248 (Miss. 2002)).

1.   Rule 702 and *Daubert*

Federal Rule of Evidence 702 provides that

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)    the testimony is based on sufficient facts or data;
>
> (c)    the testimony is the product of reliable principles and methods; and
>
> (d)    the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.   Under *Daubert*, Rule 702 charges trial courts to act as "gate-keepers," making a 'preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243-44 (5th Cir. 2002) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93 (1993)).   "In short, expert testimony is admissible only if it is both relevant and reliable." *Id.* at 244 (citing *Daubert*, 509 U.S. at 589).   The party seeking to have the district court admit expert testimony bears the burden of proof. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc).

"[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.   A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

On the subject of qualifications, "[a]n expert witness's testimony should be excluded if the district court 'finds that the witness is not qualified to testify in a particular field or on a given subject.'" *Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 199 (5th Cir. 2016) (quoting *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)). "That said, 'Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue.  Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility.'" *Id.* (quoting *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009)).

> 2.  <u>Dr. Roscoe's conclusion that Crowley was deliberately indifferent will be excluded, but Dr. Roscoe will be permitted to testify as to her opinions that Crowley breached the relevant standard of care.</u>

Jackson County and Crowley point to evidence submitted in support of their Motion [256] for Summary Judgment to argue that Dr. Roscoe's opinions that Crowley was purportedly deliberately indifferent are faulty.  Mem. [261] at 5-7. Defendants contend that Dr. Roscoe testified in her deposition that Crowley was negligent in some respects, as opposed to deliberately indifferent, *id.* at 7, and that "insufficient evidence exists to support Roscoe's opinions of deliberate indifference against Jona Crowley," *id.*

To the extent that Jackson County and Crowley seek to exclude Dr. Roscoe's conclusion that Crowley was deliberately indifferent, their Motion will be granted in part.  Dr. Roscoe's allegation of "'deliberate indifference' is merely a legal conclusion." *Doe v. Robertson*, 751 F.3d 383, 388 (5th Cir. 2014) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)); *see also Fortune v. McGee*, No. 2:12CV88-MTP,

2013 WL 4787351, at *9 (S.D. Miss. Sept. 6, 2013), *aff'd*, 606 F. App'x 741 (5th Cir.

2015) ("The issue of whether a defendant acted with deliberate indifference is a

legal conclusion.") (citing *Davis v. Burks*, 98 F.3d 1338, 1996 WL 556791, *2 (5th

Cir. 1996)).

Under Federal Rule of Evidence 704, "[a]n opinion is not objectionable just

because it embraces an ultimate issue."  Fed. R. Evid. 704(a).  "That rule, however,

does not allow a witness to give legal conclusions."  *United States v. Izydore*, 167

F.3d 213, 218 (5th Cir. 1999); *see also McBroom v. Payne*, 478 F. App'x 196, 200 (5th

Cir. 2012); *United States v. Teel*, 299 F. App'x 387, 389 (5th Cir. 2008).  "[A]n expert

may never render conclusions of law."  *Goodman v. Harris Cty.*, 571 F.3d 388, 399

(5th Cir. 2009).

Dr. Roscoe's opinions that certain conduct constituted "deliberate

indifference" are inadmissible legal conclusions.  *See Woods v. Lecureux*, 110 F.3d

1215, 1221 (6th Cir. 1997) (holding that district court did not abuse its discretion by

excluding expert's testimony on official's "deliberate indifference"); *Omar v.

Babcock*, 177 F. App'x 59, 63 n.5 (11th Cir. 2006) (finding argument to be "entirely

without merit" that district court erred by striking portions of expert's affidavit, "as

the stricken statements contain legal conclusions as to whether appellants acted

with deliberate indifference").[4]   Even if these opinions were somehow otherwise

---

[4] *See also, e.g., Nagle v. Sheriff Marlin Gusman*, No. CV 12-1910, 2016 WL 541436, at *6
(E.D. La. Feb. 11, 2016) (holding that expert's "opinion and testimony regarding 'deliberate
indifference' plainly constitutes a legal conclusion . . . [and] is therefore inadmissible.");
*Amin-Akbari v. City of Austin, Tex.*, 52 F. Supp. 3d 830, 848 (W.D. Tex. 2014) (holding that
expert's legal conclusions, "such as the officers were 'deliberately indifferent,' . . . are not
appropriate subjects for expert opinion testimony.").

admissible, their probative value is substantially outweighed by the dangers of confusing the issues and misleading the jury.  *See* Fed. R. Evid. 403.  To the extent that Jackson County and Crowley seek to exclude these opinions, their Motion to Strike will be granted in part.

With respect to Defendants' arguments as to the sufficiency of evidence to support Dr. Roscoe's opinions concerning purported breaches of the standard of care, this portion of the Motion to Strike will be denied.  Jackson County and Crowley's arguments on this point go more to the weight to be accorded Dr. Roscoe's opinions, rather than to their admissibility.  *See* Mem. [261] at 5-7; Reply [280] at 2-4; *see also Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002) ("The fact-finder is entitled to hear [the expert's] testimony and decide whether it should accept or reject that testimony after considering all factors that weigh on credibility, including whether the predicate facts on which [the expert] relied are accurate.").  The Court finds that Dr. Roscoe's alleged factual errors are fodder for cross examination, rather than grounds for exclusion.

3.   <u>Jackson County and Crowley's Motion [260] to Strike will be granted to the extent it seeks to exclude Dr. Roscoe's opinions as to Jackson County.</u>

Jackson County seeks to exclude Dr. Roscoe's opinions that the County failed to monitor the healthcare provided by the nursing staff at the ADC, failed to ensure the medical staff had in place appropriate policies and procedures, and failed to ensure that staff were properly trained to provide healthcare.  Mem. [261] at 3, 7.  These challenged opinions relate only to the County's liability.

Because the Court ultimately concludes that all of the claims against Jackson County should be dismissed regardless of whether these particular opinions are stricken, Dr. Roscoe's opinions on Jackson County's purported breaches of care are irrelevant and should be excluded.  *See* Fed. R. Evid. 401, 402.  Even if these opinions were marginally relevant, their probative value is substantially outweighed by the dangers of confusing the issues and misleading the jury.  *See* Fed. R. Evid. 403.  This portion of the Motion [260] to Strike will be granted.

4.    Plaintiffs have not shown that Dr. Roscoe is qualified to offer opinions on medical causation.

Dr. Roscoe has offered conclusions which appear to constitute medical causation opinions.  In her Report [260-1], Dr. Roscoe opines that Crowley's failure "to use such care as a reasonably prudent and careful nurse would have under similar circumstances . . . directly contributed to cause the deterioration of the serious medical condition that caused the death of Mr. John Morris Lee, Jr."  Dr. Roscoe's Report [260-1] at 7.  Dr. Roscoe similarly states that ADC nursing staff's failure to "use such care as a reasonably prudent and careful nurse would have under similar circumstances when they cared for Mr. John Morris Lee, Jr. . . . directly contributed to cause the worsening of the serious medical conditions that ultimately led to the death of Mr. John Morris Lee, Jr."  *Id.*

Dr. Roscoe further posits that "Jackson County Administration" and then-Sheriff Mike Byrd

> failed to monitor the healthcare provided by the staff, and they failed to ensure that inmates were being afforded their right to healthcare at the Jackson County Adult Detention Center.  Additionally, Jackson County

Administration and Sheriff Mike Byrd failed to ensure that medical staff had appropriate polices [sic] and procedures that were current, and reflected the provision of adequate healthcare at the Jackson County Adult Detention Center.   They also failed to ensure that staff were properly trained in the provision of healthcare in the facility.  *As a result of these failures, Mr. John Morris Lee, Jr.'s serious medical conditions deteriorated and he died.*

*Id.* at 7-8 (emphasis added).[5]

"[T]he majority rule [is] that nursing experts cannot opine as to medical causation . . . ."  *Vaughn v. Mississippi Baptist Med. Ctr.*, 20 So. 3d 645, 652 (Miss. 2009) (collecting cases); *see also Henson v. Grenada Lake Med. Ctr.*, No. 2015-CA-00973-COA, 2016 WL 6212961, at *3 (Miss. Ct. App. Oct. 25, 2016) (holding that it was "clear" that a registered nurse could not testify as to whether an alleged deviation from the standard of care caused the plaintiff's ankle to become infected or resulted in the amputation of her lower leg).

Under Mississippi statutory law, the practice of nursing does not include making medical diagnoses.  Miss. Code Ann. § 73-15-5(2) (Rev. 2002).  It logically follows that nurses are not qualified to opine as to the proximate cause of medical conditions or disease processes, *see Richardson v. Methodist Hosp. of Hattiesburg, Inc.*, 807 So.2d 1244, 1248 (Miss. 2002), under Federal Rule of Evidence 702 because such opinions would be tantamount to rendering medical diagnoses.

*Wright ex rel. Williams v. Mariner Health Care, Inc.*, No. 5:06CV169-DCB-J, 2008 WL 2704034, at *2 (S.D. Miss. July 3, 2008).  While the matter presently before the

---

[5] Dr. Roscoe also implies in other areas of her Report that Mr. Lee's seizures, cardiac arrest, and subsequent death were due to Mr. Lee's lack of medical care at the ADC.  *See, e.g.,* Report [260-1] at 4 (stating, regarding Mr. Lee's January 6, 2013, Inmate Request, that "[t]he administration and medical staff at the [ADC] failed egregiously in their responsibility to provide healthcare to Mr. Lee for his serious, life-threatening medical conditions, and he suffered seizures and a cardiac arrest, and he died.").

Court arises under federal law, rather than Mississippi law, the Court finds these authorities persuasive.

Plaintiffs attempt to distinguish the foregoing authority from this case, contending that, unlike *Richardson*, "Dr. Roscoe's proposed testimony does not reach into complex medical issues upon which several doctors have expressed differing opinions." Resp. [270] at 21. According to Plaintiffs, "[h]ere, an autopsy was performed in which Mr. Lee's cause of death was determined by the forensic pathologist. The limited holding in *Richardson* should not be extended to this case where there is little to no conflict regarding the cause of death." *Id.*[6]

The Court is not persuaded that an unqualified expert somehow becomes qualified to adopt another's opinion, which itself is not part of the present record, and then offer it to a jury as his or her own under Rule 702 and *Daubert*. Such an approach would eviscerate the requirement that an expert be "qualified . . . by knowledge, skill, experience, training, or education" to offer opinion testimony. Fed. R. Evid. 702.

Plaintiffs have not shown how Dr. Roscoe is qualified to render medical causation opinions in this case.[7] Nor does it appear that Plaintiffs actually

---

[6] Plaintiffs supply no record citation to an autopsy report by a forensic pathologist. Nor does it appear to be contained in the record.

[7] Plaintiffs have not asserted in their Response [270] that Dr. Roscoe's certification as an Adult Nurse Practitioner, *see* Dr. Roscoe's Report [260-1] at 1, renders her more qualified to testify regarding causation than a typical registered nurse. Plaintiffs have not carried their burden of showing that Dr. Roscoe is qualified to opine on this subject.

　　Whether nurse practitioners are permitted to testify regarding the issue of causation "appears to be an unsettled issue" in Mississippi. *Flax v. Quitman Cty. Hosp., LLC*, No. 2:09-CV-101-M-D, 2011 WL 3585870, at *5 (N.D. Miss. Aug. 16, 2011). In Mississippi, a registered nurse may apply for an advanced practice registered nurse license. Miss. Code

designated Dr. Roscoe to testify regarding medical causation.  *See* Pls.' Designation [274-14] at 1-2.  Moreover, even if qualified, Dr. Roscoe's medical causation opinions constitute impermissible *ipse dixit*.  *See Joiner*, 522 U.S. at 146.  The Motion to Strike will be granted as to this issue, and Dr. Roscoe will be precluded at trial from offering any medical causation opinions.

B.    Jackson County and Crowley's Motion [256] for Summary Judgment should be granted in part and denied in part.

1.    Relevant legal standards

Rule 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  If the movant carries this burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

---

Ann. § 73-15-20.  While an "advanced practice registered nurse may diagnose, treat and manage medical conditions," they "must practice in a collaborative/consultative relationship with a physician or dentist with an unrestricted license to practice in the State of Mississippi . . . ."  Miss. Code. Ann. § 73-15-5(4).  Dr. Roscoe practices as a nurse practitioner in Georgia.  *See* Dr. Roscoe's Report [260-1] at 1.  Georgia law provides that a physician may delegate to a certified nurse practitioner the authority to order diagnostic studies under certain circumstances.  *See* Ga. Code Ann. §§ 43-34-23 & 43-34-25.  Plaintiffs have not briefed this issue in response to Defendants' Motion.

Dr. Roscoe is not a medical doctor.  *See Shields v. Dolgencorp, LLC*, No. CV 16-1826, 2016 WL 6892889, at *4 (E.D. La. Nov. 23, 2016) ("While this Court acknowledges that a nurse practitioner has more training and licensure than a registered nurse, it is not to the same degree as a license to practice medicine.").  While Dr. Roscoe has achieved an advanced practice registered nurse designation, Plaintiffs have not sufficiently shown that Dr. Roscoe is qualified to offer the medical causation opinions that she does in this case.

To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there exists a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). "A genuine dispute of material fact means that evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Royal v. CCC&R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (quotation omitted). If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co.*, 671 F.3d 512, 516 (5th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). In deciding whether summary judgment is appropriate, the Court views facts and inferences in the light most favorable to the nonmoving party. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 858 (5th Cir. 2010).

2. <u>Jackson County and Crowley's Motion for Summary Judgment will be granted as unopposed as to Plaintiffs' claims under §§ 1985 and 1986.</u>

In this case, Plaintiffs' counsel has used what could best be described as a "shotgun approach" to pleading. This Court has previously admonished counsel for this approach. *Pardue v. Jackson Cty., Miss.*, No. 1:14-cv-290-KS-MTP, 2016 WL 3024153, *14 (S.D. Miss. May 25, 2016) (citing *S. Leasing Partners, Ltd. v. McMullan*, 801 F.2d 783, 788 (5th Cir. 1986)); *see also Tuskan v. Jackson Cty., Miss.*, No. 1:13cv356-HSO-RHW, Order [99] at 4 n.4 (S.D. Miss. June 24, 2016); *Peairs v. Jackson Cty., Miss.*, No. 1:13cv402-HSO-RHW, Order [106] at 4 n.3 (S.D. Miss. Aug. 11, 2016).

21

The Second Amended Complaint [109] purports to advance claims under 42 U.S.C. §§ 1985 and 1986.  *See* 2d Am. Compl. [109] at 9-10, 13-16, 20.  Jackson County and Crowley seek dismissal of these claims.  Mot. [256] at 2-3.  "Plaintiffs concede that summary judgment should be granted on the claims raised in the Complaint alleging violations of 42 U.S.C. §1985(3) and §1986."  Pls.' Mem. [278] at 27.  Jackson County and Crowley's Motion for Summary Judgment will be granted as unopposed to the extent it seeks dismissal of these claims.

3.    <u>Crowley has not demonstrated that she is entitled to summary</u>
      <u>judgment as to Plaintiffs' claims under § 1983.</u>

"The constitutional rights of a pretrial detainee are found in the procedural and substantive due process guarantees of the Fourteenth Amendment."  *Estate of Henson v. Wichita Cty., Tex.*, 795 F.3d 456, 462 (5th Cir. 2015).  "[T]he legal standard used to measure the due process rights of pretrial detainees depends on whether the detainee challenges the constitutionality of a condition of his confinement or whether he challenges an episodic act or omission of an individual state official."  *Id.*

Plaintiffs' claims against Crowley are appropriately characterized as episodic-acts-or-omissions claims.  *See id.*  at 463.  The Second Amended Complaint does not plead a conditions-of-confinement claim against Crowley.

> A jail official violates a pretrial detainee's constitutional right to be secure in his basic human needs only when the official had subjective knowledge of a substantial risk of serious harm to the detainee and responded to that risk with deliberate indifference.  In other words, the state official must know of and disregard an excessive risk to inmate health or safety.  [T]he official must both be aware of facts from which

22

the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 464 (quotations and citations omitted).

Based upon the entire summary judgment record, and viewing all facts and inferences in the light most favorable to Plaintiffs as the nonmoving parties, *see RSR Corp.*, 612 F.3d at 858, a material fact question precludes summary judgment in favor of Crowley in her individual capacity.  There is a jury issue as to whether Crowley had subjective knowledge of a substantial risk of serious harm to Mr. Lee and responded to that risk with deliberate indifference.  *See Estate of Henson*, 795 F.3d at 464.

Construed in Plaintiffs' favor, the competent summary judgment evidence indicates that Crowley received and responded to Mr. Lee's January 6, 2013, inmate request.  Inmate Request [271-2] at 1; Dep. of Jona Crowley [256-12] at 16, 58.  In this request, Mr. Lee asked the ADC medical staff to check his medical history and place him on seizure and heart medications he had previously been prescribed. Inmate Request [271-2] at 1.  While Crowley directed Mr. Lee to have the medications brought to the ADC or to sign an ROI, she did not inform Dr. Ross of the request. Dep. of Jona Crowley [256-12] at 44, 49.  Nor does it appear that Crowley examined Mr. Lee, or requested that Dr. Ross examine Mr. Lee, or otherwise followed up on Mr. Lee's condition after this request.  *See id.* at 60. Crowley testified that she did not remember checking any of Mr. Lee's medical records after receiving the January 6, 2013, kite.  *Id.* at 43-44.

23

When Crowley was questioned during her deposition whether she would say that "seizures is [sic] a pretty serious condition," Crowley responded, "I take, you know cardiac seriously.  I take – I would look at seizures, yes." *Id.* at 42.  Crowley agreed that these conditions would be something that may need to be responded to on an emergency basis.  *Id.*

Drawing all inferences in the summary judgment record in Plaintiffs' favor, a rational jury could conclude that Crowley was aware of facts from which the inference could be drawn that a substantial risk of harm to Mr. Lee existed and that Crowley actually drew the inference.  Jackson County and Crowley's Motion for Summary Judgment will be denied to the extent it seeks to dismiss Plaintiffs' § 1983 individual capacity claims against Crowley.

> 4.    <u>Jackson County is entitled to summary judgment as to Plaintiffs' §
>       1983 claims.</u>

"[C]laims against local governments premised on a theory of respondeat superior are not cognizable under § 1983." *Hinojosa v. Livingston*, 807 F.3d 657, 668 (5th Cir. 2015) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691-94 (1978)).  "Accordingly, 'isolated unconstitutional actions by municipal employees will almost never trigger liability,' but rather 'the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur.'" *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 412 (5th Cir. 2015) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).

"To establish municipal liability under § 1983, a plaintiff must show the deprivation of a federally protected right caused by action taken 'pursuant to an

official municipal policy.'" *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010) (quoting *Monell*, 436 U.S. at 694).  To this end, "[a] plaintiff must identify:  (1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Id.* at 541-42 (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)).  These three elements "are necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself." *Piotrowski*, 237 F.3d at 578.[8]

In this case, Plaintiffs appear to rely upon four different theories of liability as to Jackson County: (1) policy; (2) custom or widespread practice; (3) inadequate training and supervision; and (4) ratification. *See* 2d Am. Compl. [109] at 7-9, 11-13, 16-18; Mem. [278] at 11, 14, 17-27.  The Court is of the opinion that Plaintiffs cannot establish governmental liability under any of these theories.

     a.    <u>Plaintiffs have not shown the existence of an official policy that was a moving force causing Mr. Lee's death.</u>

Plaintiffs have not directed the Court to any official policy which was purportedly the moving force behind the violation of Mr. Lee's constitutional rights. Plaintiffs instead assert that Crowley herself implemented the policy at issue, namely the procedure for processing inmate kites for medical treatment which

---

[8] In opposition to summary judgment, Plaintiffs argue under a conditions-of-confinement theory of liability as to Defendant Crowley only.  *See* Mem. [278] at 17-19.  Even if their brief could be read as attempting to assert a conditions-of-confinement claim against Jackson County, Plaintiffs did not sufficiently plead such a claim in their Second Amended Complaint [109].

required completion of an ROI form.  Mem. [278] at 20 (asserting that the Jackson County Sheriff's Office ("JCSO") "had a policy, implemented by Jona Crowley, that was the moving force behind the deprivation of Mr. Lee's constitutional rights.").  It is beyond dispute that, as a matter of law, Crowley was not a policymaker for the County, *see, e.g., Groden v. City of Dallas, Texas,* 826 F.3d 280, 284 (5th Cir. 2016) (holding that the identity of a policymaker is a legal question), and no evidence has been presented that an actual policymaker for the County was aware of Crowley's protocol.  On the record before the Court, Plaintiffs' claims against Jackson County based upon an official policy theory are insufficient to withstand summary judgment.

       b.    <u>Plaintiffs have not demonstrated the existence of an official policy in the form of a custom or widespread practice.</u>

Plaintiffs argue in the alternative that the protocol implemented by Crowley and the ADC nursing staff for inmates to acquire a prior, existing prescription for medication was so widespread as to constitute an official policy.  Mem. [278] at 21-22.  Plaintiffs explain the protocol used by the ADC nursing staff as follows:

> Staff was to have the inmate sign a ROI and then request the inmate's medical records from the relevant facility.  When the medical records arrived, they were placed in a box for Dr. Ross to review.  Once reviewed, Dr. Ross would then order the distribution of necessary medications.

*Id.* (citing Dep. of Jona Crowley [271-1] at 9:24-10:12).

Official policy may "arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'"  *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009)

(quoting *Piotrowski*, 237 F. 3d at 579).  "A customary policy consists of actions that have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the disputed conduct." *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 169 (5th Cir. 2010) (citing *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984)).

"It is thus clear that a plaintiff must demonstrate 'a pattern of abuses that transcends the error made in a single case.'" *Peterson*, 588 F.3d at 850-51 (quoting *Piotrowski*, 237 F.3d at 582).  "A pattern requires similarity and specificity; '[p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question.'" *Id.* at 851 (quoting *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005)).  "A pattern also requires 'sufficiently numerous prior incidents,' as opposed to 'isolated instances.'" *Id.* (quoting *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989)).

"[A] single decision by a policy maker may, under certain circumstances, constitute a policy for which a [municipality] may be liable." *Valle*, 613 F.3d at 542 (quoting *Brown v. Bryan Cty.*, 219 F.3d 450, 462 (5th Cir. 2000)).  "However, this 'single incident exception' is extremely narrow and gives rise to municipal liability only if the municipal actor is a final policymaker." *Id.* (quoting *Bolton v. City of Dallas*, 541 F.3d 545, 548 (5th Cir. 2008)).

Plaintiffs have not presented sufficient competent summary judgment proof to show that the practice of having detainees execute an ROI form in order for the

ADC to obtain information regarding prior prescriptions, in and of itself, violated detainees' constitutional rights.  The Court is not persuaded that the ADC nursing staff necessarily exhibited deliberate indifference by requiring inmates to complete an ROI form before being provided prescription medication.  Plaintiffs have not pointed out any prior, specific incidents involving this process which caused a constitutional violation.  Nor have Plaintiffs demonstrated a sufficient pattern of such alleged abuses.  *See Peterson*, 588 F.3d at 850-51.  The only alleged constitutional violation to which Plaintiffs have pointed is the purported violation of Mr. Lee's constitutional rights.

As for the single-incident exception, Crowley was not a final policymaker for the County.  *See Valle*, 613 F.3d at 542.  Nor has Plaintiff cited to any competent summary judgment evidence demonstrating that an actual policymaker for the County was aware of Crowley's procedure.  This exception is therefore inapplicable. *See id.*

To the extent that Plaintiffs may assert that a policymaker with the County somehow delegated authority to Crowley, the Fifth Circuit has distinguished between "final decisionmaking authority and final policymaking authority."  *Bolton*, 541 F.3d at 548.  "[D]iscretion to exercise a particular function does not necessarily entail final policymaking authority over that function."  *Id.* at 549.  The Fifth Circuit has "rejected the line of authority . . . which would permit policy or custom to be attributed to the city itself by attribution to any and all officers endowed with final or supervisory power or authority."  *Id.* at 549-50 (quotation omitted).  "The

28

finality of an official's action does not therefore automatically lend it the character of a policy." *Id.* at 550.

Even if decisionmaking authority was delegated to Crowley by some policymaker, there is no indication in the record that the County delegated any final policymaking authority to Crowley or any other medical staff member at the ADC. Plaintiffs therefore have not shown the existence of an official policy of the County that was a moving force causing Mr. Lee's death.

In sum, Plaintiffs have not presented sufficient evidence to demonstrate a pattern of constitutional violations bearing sufficient resemblance to the specific violation in question to support municipal liability based upon a theory of custom or widespread practice.

      c.    <u>Plaintiffs have not shown that County liability should be imposed for purported inadequate training and supervision.</u>

Plaintiffs maintain that "[i]t is undisputed that the JCSO's [sic] had absolutely no training procedures for its medical staff." Mem. [278] at 24.  Plaintiffs argue that "the failure of the policymaker to adopt any type of training procedure for the medical staff evidences deliberate indifference to the provision of adequate medical treatment." *Id.* at 25.  According to Plaintiffs,

> it was completely foreseeable that necessary medical treatment may not be provided because Dr. Ross had not received medical records for review.  As often happens, medical records may not be provided upon first request, a fax may not be properly transmitted, a clerk may not see the request, or any number of common mistakes may happen to prevent the medical records from ever reaching Dr. Ross's desk.  This failure – to provide any treatment to Mr. Lee because the medical staff didn't have his medical records – was the only predictable result and amounted to a conscious disregard for Mr. Lee's rights.

*Id.* at 26.

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* (citation omitted). "To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the untrained employees come into contact." *Id.* (quotation omitted). "Only then can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id.* at 389 (quotation omitted).

The Fifth Circuit has held that, in order

to succeed on a *Monell* claim arising from a municipality's failure to adopt an adequate training policy, a plaintiff must demonstrate that: "(1) [the municipality's] training policy procedures were inadequate, (2) [the municipality] was deliberately indifferent in adopting its training policy, and (3) the inadequate training policy directly caused [the constitutional violation]."

*Kitchen v. Dallas Cty., Tex.*, 759 F.3d 468, 484 (5th Cir. 2014) (quoting *Sanders–Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010)).

"'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick*, 563 U.S. at 61. "Deliberate indifference requires a showing of more than

negligence or even gross negligence." *Estate of Davis ex rel. McCully*, 406 F.3d at 381.

"A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62 (quotation omitted); *see also Thompson v. Upshur Cty.*, 245 F.3d 447, 459 (5th Cir. 2001) ("Proof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights is normally required before such lack of training or supervision constitutes deliberate indifference."). The Supreme Court has explained that policymakers' continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability." *Connick*, 563 U.S. at 62 (quotation omitted). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.*

Plaintiffs have presented no evidence to demonstrate a pattern of violations of constitutional rights based upon alleged inadequate training or supervision of the ADC medical staff. As stated earlier, the Court is not persuaded that ADC personnel were deliberately indifferent to a serious risk of harm every time they required a detainee to complete an ROI. Plaintiffs have not shown that any failure to train the ADC medical staff rises to the level of an official government policy for

purposes of § 1983.  *See Connick*, 563 U.S. at 61.  Nor have Plaintiffs pointed to any evidence demonstrating that the County was deliberately indifferent in adopting its training policy or that the inadequate training policy directly caused Mr. Lee's alleged constitutional violation.  *See Kitchen*, 759 F.3d at 484.

There is a limited exception to the requirement of a pattern of similar violations "for single-incident liability in a narrow range of circumstances where a constitutional violation would result as the highly predictable consequence of a particular failure to train."  *Kitchen*, 759 F.3d at 484 (quotation omitted).  "[S]howing merely that additional training would have been helpful in making difficult decisions does not establish municipal liability."  *Id.* at 485 (quoting *Connick*, 563 U.S. at 68).  "On the contrary, the risk must be 'so predictable that failing to train the [municipal personnel] amounted to conscious disregard' for the injured party's rights."  *Id.* (quoting *Connick*, 563 U.S. at 71).

In *Connick*, the Supreme Court considered the training certain prosecutors received on their disclosure obligations under *Brady v. Maryland*, 373 U.S. 83 (1963).  The Supreme Court found the limited, single-incident liability exception inapplicable because "attorneys, unlike police officers, are equipped with tools to find, interpret, and apply legal principles," like those presented by *Brady* issues.  *Connick*, 131 S. Ct. at 70.  The plaintiff in *Connick* did not "show that it was *so* predictable that failing to train the prosecutors amounted to *conscious disregard* for defendants' *Brady* rights."  *Id.* at 71 (emphasis in original).

The Court is not persuaded that this limited exception applies in the present case.  When former Sheriff Byrd was asked if he had his "medical staff trained in any way, shape or form," he responded "[w]ell, I would hope they would be certified nurses and doctors and - - yes, sir."  Dep. of James Michael Byrd [271-13] at 20. When asked if he required extra training, Byrd testified that he "figured their education and their experience in the medical field was enough."  *Id.* at 23.  Crowley also testified that when she began working at the ADC, she "was trained how to give the medications, set up the medications and distribute it in the back . . . . Nothing else."  Dep. of Jona Crowley [256-12] at 62.

The ADC nurses were registered nurses and licensed practical nurses, and Dr. Ross was a medical doctor.  The ADC medical staff consisted of trained medical professionals.  *See* Miss. Code Ann. §§ 73-15-19 (qualifications to become a registered nurse in Mississippi), 73-15-21 (qualifications to become a licensed practical nurse in Mississippi), & 73-25-3 (requirements for medical license). Plaintiffs have not shown that it was so predictable that failing to train the ADC medical staff in the area of processing inmate requests amounted to conscious disregard for Mr. Lee's, or any other detainee's, constitutional rights.  In sum, Plaintiffs have not demonstrated that liability should be imposed on the County based upon the theory that it failed to adequately train or supervise the ADC medical staff.

>   d.   <u>Plaintiffs have not demonstrated the existence of an official policy or custom attributable to the County based upon a theory of ratification.</u>

Plaintiffs assert that former Sheriff Mike Byrd ("Byrd") made certain representations which ratified Crowley's actions.  According to Plaintiffs, "[a]s result of his representations to the public, Mike Byrd ratified the actions of Jona Crowley in implementing a policy that resulted in Mr. Lee being denied necessary medical treatment and ultimately, his death."  Mem. [278] at 23.  Plaintiffs do not supply a record citation to support this statement or describe the representations to which they refer.

Plaintiffs have not pointed the Court to any evidence of Byrd's actions which would constitute ratification for purposes of imposing municipal liability.  Plaintiffs have attached to their Response what appears to be a newspaper article taken from the internet.  *See* Article [271-11] at 1-2.  This may be the representation to which Plaintiffs refer in their brief.

According to the article, "[a] statement released by Byrd on Tuesday said a Release of Information form was signed by Lee and 'immediately faxed to Singing River Hospital.'"  *Id.* at 1.

>   When asked about the allegations, Byrd responded with a statement through department spokesperson Cherie Ward.
>
>   "Our medical staff has documentation showing we followed all of our policies and procedures correctly," Byrd said.

*Id.*

This article constitutes inadmissible hearsay within hearsay, *see* Fed. R. Evid. 801, 802, 805, to which Jackson County objects, *see* Reply [282] at 5-6 (citing

Fed. R. Civ. P. 56(c)(2); Fed. R. Evid. 801(c), 802). Even if the evidence offered by Plaintiffs could be presented in a form that would be admissible in evidence, *see* Fed. R. Civ. P. 56(c)(2), it would not change the result.

> The Supreme Court has explained that
>
> when a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with *their* policies. If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.

*St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (plurality opinion) (emphasis in original). This does not appear to be the case here.

To the extent Byrd's isolated statements in one newspaper article could be construed as defending the ADC staff's actions, "[g]ood faith statements made in defending complaints against municipal employees do not demonstrate ratification." *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 169 (5th Cir. 2010) (citing *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 852 (5th Cir. 2009)). "A 'policymaker who defends conduct that is later shown to be unlawful does not necessarily incur liability on behalf of the municipality.'" *Id.* (quoting *Peterson*, 588 F.3d at 848).

Viewing all facts and inferences in the light most favorable to Plaintiffs, they have not shown that ratification applies. *See id.* Plaintiffs' conclusory allegations in response to the Motion for Summary Judgment are insufficient.

In sum, Plaintiffs have not shown that an official policy, custom, or widespread practice of the County was the moving force behind any constitutional

violation that may have occurred in this case.  Nor have Plaintiffs created a fact question regarding the County's liability based upon any alleged inadequate training and supervision or a theory of ratification.  Plaintiffs' claims against the County will be dismissed with prejudice.

C.    Jackson County's Motion [267] to Strike Supplemental Witnesses should be denied as moot.

The Court has determined that all claims against Jackson County should be dismissed with prejudice.  Jackson County's Motion [267] to Strike Supplemental Witnesses is therefore moot.

## III. CONCLUSION

To the extent the Court has not addressed any of the parties' arguments, it has considered them and determined that they would not alter the result.  The Court concludes that Jackson County and Crowley's Motion to Strike Plaintiffs' Expert Dr. Roscoe should be granted in part and denied in part; that Dr. Roscoe should be prohibited at trial from testifying about Jackson County's purported breaches of care and medical causation and from drawing a legal conclusion regarding "deliberate indifference"; that Jackson County and Crowley's Motion for Summary Judgment should be granted in part and denied in part; that Plaintiffs' claims against Crowley pursuant to 42 U.S.C. §§ 1985 and 1986 should be dismissed with prejudice; and that all of Plaintiffs' claims against Jackson County should be dismissed with prejudice.  Plaintiffs' claims against Crowley pursuant to 42 U.S.C. § 1983 will proceed to trial.  Jackson County's Motion [267] to Strike Supplemental Witnesses should be denied as moot.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Motion [260] to Strike Plaintiffs' Expert Dr. Lori E. Roscoe filed by Defendants Jackson County, Mississippi, and Jona Crowley, is **GRANTED IN PART AND DENIED IN PART**, and Dr. Roscoe is precluded from testifying at trial regarding Jackson County's purported breaches of care and medical causation and from drawing a legal conclusion regarding "deliberate indifference."

**IT IS, FURTHER, ORDERED AND ADJUDGED** that the Motion [256] for Summary Judgment filed by Defendants Jackson County, Mississippi, and Jona Crowley, is **GRANTED IN PART AND DENIED IN PART**, that Plaintiffs' claims against Crowley pursuant to 42 U.S.C. §§ 1985 and 1986 are **DISMISSED WITH PREJUDICE**, and that all of Plaintiffs' claims against Jackson County are **DISMISSED WITH PREJUDICE**.  Plaintiffs' claims against Crowley pursuant to 42 U.S.C. § 1983 will proceed to trial.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that the Motion [267] to Strike Supplemental Witnesses filed by Defendant Jackson County, Mississippi, is **DENIED AS MOOT**.

**SO ORDERED AND ADJUDGED**, this the 3rd day of January, 2017.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE